```
1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
2                          EASTERN DIVISION

3

4   UNITED STATES OF AMERICA,      )
                                   )  Case No. 1:21-cr-360-DCN
5          Plaintiff,              )
                                   )  Cleveland, Ohio
6          vs.                     )  Tuesday, October 5, 2021
                                   )
7   BRIAN ROSS,                    )
                                   )  CHANGE OF PLEA VIA
8          Defendant.              )  VIDEOCONFERENCE
    _____ )

9

10

11                    TRANSCRIPT OF PROCEEDINGS

12        BEFORE THE HONORABLE WILLIAM H. BAUGHMAN, JR.,
                   UNITED STATES MAGISTRATE JUDGE

13

14  APPEARANCES:

15  For the Plaintiff:

16        OFFICE OF THE U.S. ATTORNEY - CLEVELAND
          BY:  ROBERT J. KOLANSKY, AUSA
17        801 West Superior Avenue, Suite 400
          Cleveland, OH 44113
18        (216) 622-3780

19  (Appearances continued on Page 2)

20  DIGITALLY RECORDED:            For The Record (FTR)
                                   2:01:22 p.m. till 2:46:06 p.m.
21
    RECORDED BY:                   K. Malley
22
    TRANSCRIBED BY:                Heather K. Newman
23                                 (216) 357-7035

24

25  Proceedings recorded by electronic sound recording; transcript
    produced by machine shorthand and computer-aided transcription.
```

1    <u>APPEARANCES CONTINUED</u>:

2    For the Defendant:

3         THE ALBENZE LAW GROUP LLC
          BY:  STEVE ALBENZE, ESQ.
4         124 Middle Avenue, Suite 900
          Elyria, OH 44035
5         (440) 523-1783

6                              *   *   *   *   *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          CLEVELAND, OHIO; TUESDAY, OCTOBER 5, 2021; 2:01:22 P.M.

2                              --oOo--

3                      P R O C E E D I N G S

4          COURTROOM DEPUTY:  The case before the Court today is

5    1:21-cr-360, the United States of America vs. Brian Ross.

6          THE COURT:  Counsel for the United States, are you

7    ready to proceed?

8          MR. KOLANSKY:  Good afternoon, Your Honor,

9    Robert Kolansky for the United States.  Ready to proceed at

10   this time.

11         THE COURT:  And counsel for Mr. Allen -- Mr. Ross, are

12   you ready to proceed?

13         MR. ALBENZE:  I am, Your Honor.  Steve Albenze, as

14   substitution counsel for Attorney Michael Kinlin, here with my

15   client, the defendant.

16         THE COURT:  Mr. Ross, you have a right to appear in

17   person in court for this change of plea.  Given the national

18   emergency in which we find ourselves, and under recent general

19   orders of this court and the CARES Act, proceedings such as

20   this change of plea are permitted to be conducted by

21   videoconference to protect the health of everyone involved.

22         Now, have you spoken with your attorney regarding your

23   right to appear in person and --

24         THE DEFENDANT:  Yes.

25         THE COURT:  -- that right to permit this proceeding to

1  go forward by videoconference?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you waive your right to appear in

4  person for this arraignment --

5          THE DEFENDANT:  I do --

6          THE COURT:  -- for this guilty plea and consent to

7  have the hearing conducted by videoconference?

8          THE DEFENDANT:  Yes.

9          THE COURT:  I find your waiver of personal appearance

10 and your consent to go forward by videoconference have been

11 knowingly, voluntarily, and intelligently made.  I accept your

12 waiver and your consent, and we'll proceed with this

13 Plea Hearing with Mr. Ross participating by videoconference.

14         Now, given the unique circumstances in which we find

15 ourselves, and the fact that some hearings in this case may be

16 conducted by videoconference, there may be times during the

17 course of the case that, after consulting with you, your

18 attorney may need to sign on your behalf documents related to

19 the case.  The situation may arise where you and your attorney

20 do not appear together for the court proceeding because both of

21 you are appearing by videoconference.  It shouldn't be a

22 problem today because, as I understand it, you're both in the

23 same location, but in any event, do you understand why your

24 attorney, after consulting with you and obtaining your

25 approval, may at times need to sign on your behalf documents

1  related to the case?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And do you authorize your counsel to sign

4  on your behalf in those limited situations after consulting

5  with you and obtaining your approval?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Now this admonishment is for the attorneys

8  for the government.

9          Under the Due Process Protections Act, the Court

10  reminds the government of its obligations under *Brady vs.*

11  *Maryland*, 373 United States Reports, Page 83, a 1963 decision

12  of the Supreme Court, to disclose evidence favorable to the

13  defendant and material to the defendant's guilt or punishment.

14  The government is ordered to comply with *Brady* and its progeny.

15  The failure to do so in a timely manner may result in

16  consequences, including dismissal of the Indictment, exclusion

17  of government witnesses or evidence, adverse jury instructions,

18  dismissal of charges, contempt proceedings, sanctions by the

19  Court, and other remedies that may be just under the

20  circumstances.  I will issue this order by way of a docket

21  entry memorializing these admonishments.

22      (Brief pause in proceedings).

23          THE COURT:  Now, Mr. Ross, I have been advised that

24  you wish to plead guilty to certain charges that are made in

25  the Indictment; is that correct?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And I also understand that you have

3  consented to have me, as the magistrate judge assigned to this

4  case, receive your plea; is that correct?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Clerk will mark a copy of the consent to

7  my jurisdiction as Exhibit 1, and is that signed?  Yes, it is.

8          Now, did you consent -- did you discuss this consent

9  with your attorney before you signed it?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that you have a right to

12  offer your guilty plea to a United States District Judge?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that by giving this

15  consent to my jurisdiction you give up the right to offer your

16  guilty plea to the assigned district judge?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you still want to proceed with a plea

19  before me?

20          THE DEFENDANT:  Yes.

21          THE COURT:  For purposes of accepting your guilty plea

22  I will be asking you a series of questions.  The court reporter

23  will record my questions and your answers.  The court reporter

24  can only record a verbal answer.  She cannot record a nod of

25  the head or other gesture, so please verbalize your answers.

1         If you don't understand any of the questions, or at

2 any time you want to consult with your attorney before you

3 answer, please say so because it's essential to a valid plea

4 that you understand each question before you answer it.

5         None of my questions are meant or designed to

6 embarrass you.

7         Do you understand these instructions?

8         THE DEFENDANT:  Yes.

9         THE COURT:  You have the right to remain silent and

10 the right not to incriminate yourself.

11         You are not required to make a statement, and anything

12 you say may be used against you.

13         Before receiving your guilty plea there are a number

14 of questions I will ask to assure myself that your plea is

15 valid.  By answering these questions you will be making

16 statements against your interest and you will incriminate

17 yourself.

18         Do you understand that by proceeding here with a

19 guilty plea you will necessarily be giving up your right to

20 remain silent and your right not to incriminate yourself?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Mr. DeVan, please administrator the oath

23 to Mr. Ross.

24         COURTROOM DEPUTY:  Mr. Ross, can you please raise your

25 right hand?

 1          Do you solemnly swear that the testimony in this case

 2   will be the truth, the whole truth, and nothing but the truth,

 3   so help you God?

 4          THE WITNESS:  I do.

 5          COURTROOM DEPUTY:  Thank you.

 6          THE COURT:  Mr. Ross, you've now been sworn and you

 7   are under oath to tell the truth.  Your answers to my questions

 8   will be subject to penalties of perjury if you do not tell the

 9   truth.

10          Do you understand these instructions?

11          THE DEFENDANT:  Yes.

12          THE COURT:  You have a right to be represented by an

13   attorney throughout the case.  As I mentioned to you earlier,

14   if you cannot afford an attorney, one will be appointed to

15   represent you.

16          Have you had enough time to discuss the charges made

17   against you and your response to those charges with your

18   attorney?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Have you told your attorney everything you

21   know about the case?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Are you completely satisfied with your

24   attorney's representation and with the advice that he has given

25   you?

1            THE DEFENDANT:  Yes.

2            THE COURT:  As part of this proceeding I must

3    determine your -- that you are competent to understand the

4    proceedings and to enter a knowing plea.

5            What is your full name?

6            THE DEFENDANT:  Brian Anthony Ross.

7            THE COURT:  And how old are you?

8            THE DEFENDANT:  53.

9            THE COURT:  Are you a citizen of the United States?

10            THE DEFENDANT:  Yes.

11            THE COURT:  And how far did you go in school?

12            THE DEFENDANT:  I have an associate's degree in

13   business.

14            THE COURT:  Are you currently on probation, parole, or

15   supervised release for any state or federal conviction?

16            THE DEFENDANT:  Other than this one, no.

17            THE COURT:  Within the past year have you been

18   hospitalized or treated for a mental illness?

19            THE DEFENDANT:  No.

20            THE COURT:  Within the past year have you been

21   hospitalized or treated for alcohol addiction?

22            THE DEFENDANT:  No.

23            THE COURT:  Within the past year have you been

24   hospitalized or treated for addiction to any narcotic drug?

25            THE DEFENDANT:  No.

1          THE COURT:  In the past 24 hours have you taken any
2    medication, drugs, or alcohol?
3          THE DEFENDANT:  Just my prescribed medication.
4          THE COURT:  Has your consumption of that medication
5    affected your ability to understand what's happening in these
6    proceedings today?
7          THE DEFENDANT:  No.
8          THE COURT:  What is your understanding of what we're
9    doing here this afternoon?
10          THE DEFENDANT:  My understanding is that we're coming
11    to agreement on the charges that have been leveled against me
12    to get a means to an end.
13          THE COURT:  So you understand you're pleading guilty?
14          THE DEFENDANT:  Yes.
15          THE COURT:  Mr. Kolansky, do you have any doubt as to
16    the defendant's competence to plead at this time?
17          MR. KOLANSKY:  No, I do not, Your Honor.  Thank you.
18          THE COURT:  Mr. Albenze, do you have any doubt as to
19    Mr. Ross' competence to plead at this time?
20          MR. ALBENZE:  No, Your Honor, I have no doubt in his
21    competence to plead.
22          THE COURT:  Did I pronounce your name correctly?
23          MR. ALBENZE:  Albenze, absolutely.
24          THE COURT:  Okay.  Very good.
25          MR. ALBENZE:  Most people slaughter it the first time,

1  so you did very well.

2          THE COURT:  Well, thank you.

3          Mr. Ross, by proceeding with a guilty plea you will

4  give up certain constitutional rights.  I will next review with

5  you those rights and establish that you understand the rights

6  you will be giving up by pleading guilty.

7          You have a right to stand by your plea of not guilty

8  and to require the government to proceed to a trial.

9          You have a right to a trial by jury, including

10  assistance of counsel at trial.

11          At such trial, you would be presumed to be innocent.

12  The government would be required to prove you guilty by

13  competent evidence beyond a reasonable doubt.  You would not

14  have to prove that you are innocent.

15          Do you understand these rights?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And do you understand that by pleading

18  guilty you will be giving up these rights?

19          THE DEFENDANT:  Yes.

20          THE COURT:  You have the right to compulsory process,

21  that is, at trial, you have the right to the issuance of

22  subpoenas to require the attendance of witnesses to testify in

23  your defense.

24          Do you understand this right?

25          THE DEFENDANT:  Yes.

1            THE COURT:  Do you understand that by pleading guilty

2    you will be giving up this right?

3            THE DEFENDANT:  Yes.

4            THE COURT:  You have the right to hear, see, and

5    cross-examine all witnesses that the United States may present

6    against you at trial.

7            Do you understand these rights?

8            THE DEFENDANT:  Yes.

9            THE COURT:  You understand that by pleading guilty you

10   will be giving up these rights?

11           THE DEFENDANT:  Yes.

12           THE COURT:  You have the right to remain silent at

13   trial.  While you have the right to testify, if you chose to do

14   so, you would also have the right not to testify and no

15   inference or suggestion of guilt could be drawn from the fact

16   that you did not testify.

17           Do you understand this right?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Do you under- -- do you understand that by

20   pleading guilty you will be giving up this right?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Again, as I told you earlier, if you

23   proceed with a guilty plea, you'll give up your right not to

24   incriminate yourself.  I will ask you questions shortly about

25   what you did in order to satisfy myself that you are guilty as

1  charged.  You will have to admit your guilt to make a valid

2  guilty plea.

3          Do you understand your right not to incriminate

4  yourself?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You understand that by pleading guilty you

7  will be giving up that right?

8          THE DEFENDANT:  Yes.

9          THE COURT:  If you plead guilty and the district judge

10 accepts your plea, do you understand that you will give up your

11 right to a trial and to the other rights I just told you about?

12         THE DEFENDANT:  Yes.

13         THE COURT:  You understand that there will be no

14 trial?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you understand that the district judge

17 will enter a judgment of guilty and sentence you on the basis

18 of your guilty plea after considering a Pre-Sentence Report?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you understand the offenses to which

21 you are pleading guilty are felony offenses and that a judgment

22 of guilty may deprive you of valuable civil rights, such as the

23 right to vote, the right to hold public office, the right to

24 serve on a jury, and the right to possess any kind of a

25 firearm?

1    THE DEFENDANT:  Yes.

2    THE COURT:  The clerk will mark a copy of the

3 Indictment as Exhibit 2 for this hearing.

4    Do you have a copy of that Indictment, Mr. Ross?

5    THE DEFENDANT:  I do.

6    THE COURT:  And have you discussed with your attorney

7 the charges in the Indictment to which you intend to plead

8 guilty?

9    THE DEFENDANT:  Yes.

10    THE COURT:  And do you understand the charges made in

11 the Indictment --

12    THE DEFENDANT:  Yes.

13    THE COURT:  -- against you?

14    Mr. Kolansky, please summarize the charges to which

15 the defendant intends to plead guilty, describe the offense and

16 also the penalty for those offenses.

17    MR. KOLANSKY:  Certainly, Your Honor.

18    The Plea Agreement contemplates the defendant will

19 plead guilty to Counts One through Three, each of which charges

20 a violation of Title 21 United States Code § 841(a)(1) and

21 (b)(1)(C) for Distribution of a Controlled Substance.  Each

22 offense counts -- carries a maximum 20 years incarceration, a

23 maximum $1 million fine, minimum 3 years of supervised release

24 up to life, and a $100 special assessment.

25    The plea to Count Four would be for violation of

Title 21 United States Code § 841(a)(1) and (b)(1)(C), this for possession of a controlled substance with the intent to distribute it.  It carries the same penalties as the first three counts, that is, maximum 20 years incarceration, maximum $1 million fine, minimum 3 years of supervised release up to life, and a $100 special assessment.

Count Five charges a violation of Title 21 United States Code § 841(a)(1) and (b)(1)(B), as in boy, for possession of a controlled substance with the intent to distribute.  Carries a mandatory minimum 5 years incarceration, maximum 40 years, maximum $5 million fine, minimum 4 years of supervised release up to life, and a $100 special assessment.

Count Six charges a violation of Title 18 United States Code § 922(g)(1) for possession of a firearm and/or ammunition by a convicted felon.  Carries a maximum 10 years incarceration, maximum -- it states here $1 million fine but I believe, Your Honor, that should be a $250,000 fine, it carries a minimum 3 years of supervised release up to life, and a $100 special assessment.

Finally, Count Seven is a violation of Title 18 United States Code § 924(c)(1)(A) for Possession of a Firearm in Furtherance of a Drug Trafficking Crime.  This carries a minimum 60 months incarceration consecutive to the other counts, maximum imprisonment of life.  There is a maximum $250,000 fine, maximum supervised release is 5 years, and

1   there's a $100 special assessment.

2           THE COURT:  Mr. Ross, is your decision to plead --

3   first of all, one more matter.

4           Do you understand the maximum possible penalties for

5   the offenses with which you're charged in the Indictment are as

6   stated for the record by Mr. Kolansky?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Is the decision to plead guilty the result

9   of an exercise of your own free will?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Has anyone threatened you or anyone else

12  or forced you in any way to plead guilty?

13          THE DEFENDANT:  No.

14          THE COURT:  Have you entered into a written

15  Plea Agreement with the government?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Clerk will mark a copy of the

18  Plea Agreement as Exhibit 3 to this hearing.

19          And do counsel and Mr. Ross have a copy of that

20  agreement?

21          MR. ALBENZE:  We do, Your Honor.

22          THE COURT:  Mr. Ross, I direct your attention to the

23  last page of the Plea Agreement, that being Page 12.

24          Is that your signature on Page 12 of the

25  Plea Agreement?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Now, did you read and discuss the

3     Plea Agreement with your attorney before you signed it?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand the terms of the

6     Plea Agreement?

7          THE DEFENDANT:  I do.

8          THE COURT:  Now, Mr. Kolansky, will you please

9     succinctly summarize the substance of the Plea Agreement for

10    the record?

11         MR. KOLANSKY:  Certainly, Your Honor.

12         The Plea Agreement contemplates the defendant will

13    plead to the Indictment, each of Counts One through Seven that

14    I read onto the record a moment ago, that he would pay a

15    special assessment of $100 per count for a total of $700.

16    There is an agreement to forfeiture of $1,980 in United States

17    currency, a Taurus handgun, an Iver Johnson Cadet handgun, a

18    Cobra model .38 handgun.

19         The Plea Agreement contemplates that the United States

20    will not bring any other charges against the defendant known to

21    the United States basically on the date of the execution of

22    this agreement relating to conduct charged within the

23    Indictment described in the factual basis or otherwise

24    currently within the knowledge of the United States Attorney's

25    Office.

1     Further, it indicates that there's no agreement about

2     the defendant's Criminal History Category, that that will be

3     determined after a Pre-Sentence Report is prepared.

4         There's no agreement about the sentence or sentencing

5     range and that each party is free to recommend whatever

6     sentence it believes to be appropriate.

7         It does outline the stipulated guideline computation

8     that the parties agree that the drugs distributed in Counts One

9     through Three and possessed with the intent to distribute,

10    Counts Four and Five, was a total of 40.94 grams of cocaine

11    base, or crack, which corresponds to a Base Offense Level of 24

12    under the guidelines.  Further, the Plea Agreement states that

13    the defendant understands he's subject to a mandatory minimum

14    sentence of 60 months for Count Five.

15        The parties agree that there is an additional 60-month

16    consecutive sentence for Count Seven pursuant to guideline §

17    2K2.4(b) and then once -- otherwise, there are no specific

18    offense characteristics, guideline adjustments or departures

19    that do apply in this case.

20        The Plea Agreement contemplates that the United States

21    will move for a downward reduction of three levels for the

22    defendant's acceptance of responsibility provided that he --

23    his conduct continues to reflect his acceptance of

24    responsibility.

25        The Plea Agreement, in Paragraph 19, acknowledges that

the defendant has been advised of his rights in limited

circumstances to appeal the conviction and sentence in this

case, but that he is giving up his appeal rights, including

collateral appeal rights under 28 United States Code § 2255.

He does, however -- however, he does reserve the right to

appeal any punishment in excess of the statutory maximum, or

any sentence to the extent it exceeds the maximum of the

sentencing imprisonment range determined under the guidelines

in accordance with the stipulations and computations in this

agreement.  However, there is nothing that bars the defendant

from perfecting any legal remedies that he may have on appeal

regarding ineffective assistance of counsel or prosecutorial

misconduct.

It outlines the waiver of the statute of limitations

in Paragraph 20.

It outlines the factual basis and relevant conduct in

Paragraph 21.

It indicates that the parties are free to advise the

Court about matters not expressly addressed herein.

It advises the defendant of the consequences of

breaching the Plea Agreement, that this agreement is only

binding upon the United States Attorney's Office for the

Northern District of Ohio and no other federal, state, or local

government.

And on the final page of it, it outlines the defendant

1    is not only satisfied with the assistance of counsel, but this

2    agreement is completely and voluntarily entered by the

3    defendant, Your Honor.

4              THE COURT:  Thank you, Mr. Kolansky.

5              Mr. Ross, I direct your attention to Paragraph 19 of

6    the Plea Agreement.  It begins over on Page 7 and runs over to

7    Page 8.

8              Do you understand that if I recommend the acceptance

9    of the Plea Agreement and the district judge accepts my

10   recommendation, you cannot withdraw your guilty plea?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And, again, referring to Paragraph 19, do

13   you understand you cannot appeal your sentence except under the

14   limited circumstances permitted by Paragraph 19 in the

15   Plea Agreement?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you understand you cannot contest your

18   sentence by any post-conviction proceeding except under the

19   limited circumstances permitted by Paragraph 19 in the

20   Plea Agreement?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Mr. Ross, have you and your attorney

23   discussed how the United States Sentencing Commission

24   Guidelines might apply to your case?

25             THE DEFENDANT:  Yes.

1          THE COURT:  You understand -- do we have up there the

2   paragraphs about the guidelines?  Are they published?  I'm not

3   seeing them.

4          Thank you.

5          I direct your attention to Paragraph 16 of the

6   Plea Agreement.

7          Do you understand that this paragraph discusses the

8   application of the sentencing guidelines to your case under

9   this Plea Agreement?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And have you discussed with your attorney

12   what range of sentence you may receive under the Plea Agreement

13   and the advisory sentencing guidelines?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Mr. Albenze, well, have you given Mr. Ross

16   an estimate of the sentence that he might receive under the

17   Plea Agreement and the advisory guidelines?

18          MR. ALBENZE:  From my understanding, I believe

19   Attorney Kinlin went over all of that with Mr. Ross, and I

20   believe that was somewhere in the area of around 7 years if I'm

21   not mistaken.

22          THE COURT:  Mr. Kolansky, is that a reasonable

23   estimate given the factors currently known?

24          MR. KOLANSKY:  Yes, Your Honor.  I think it would be a

25   little bit more than 7, but that is close.

1    I can tell the Court that I have provided Mr. Kinlin

2 with my guidelines computation.  I know that he has discussed

3 that with Mr. Ross as well and, so, I believe Mr. Ross has gone

4 over this with Mr. Kinlin based on my discussions.

5    THE COURT:  Mr. Ross, do you understand that the Court

6 will not be able to determine the guideline calculation until

7 after a Pre-Sentence Report has been completed and you and the

8 government have had an opportunity to challenge the facts

9 reported by the probation officer?

10    THE DEFENDANT:  Yes.

11    THE COURT:  Do you understand that the sentence

12 imposed may be different from any estimate you may have

13 received from your attorney or the attorney for the government?

14    THE DEFENDANT:  Yes.

15    THE COURT:  You understand that after it's been

16 determined what guideline range applies to your case the

17 district judge has the authority in some circumstances to

18 impose a sentence that is less severe or more severe than the

19 sentence called for by the guidelines?

20    THE DEFENDANT:  Yes.

21    THE COURT:  Do you also understand that under some

22 circumstances you or the government may have a right to appeal

23 any sentence imposed, and in your case that right is limited by

24 Paragraph 19 in the Plea Agreement?

25    THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that parole's been

2    abolished, and if you are sentenced to parole, you will not be

3    released on parole?

4          I -- I got that wrong.  Do you understand that parole

5    has been abolished and if you are sentenced to prison, you will

6    not be released on parole?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  Very well.

9          And, again, I ask you, Mr. Ross, do you understand

10   that the Court will not be able to determine the guideline

11   sentence for your case until after a Pre-Sentence Report has

12   been completed and you and the government have had an

13   opportunity to challenge the facts reported by the probation

14   officer?

15         Mr. Ross?

16         Mr. Ross, do you understand that?

17         The video seems to be -- audio, rather, seems to be

18   off.

19         MR. ALBENZE:  Can you hear us now?

20         THE COURT:  Yes, I can hear you now.

21         MR. ALBENZE:  Okay.  Sorry about that.  There you go.

22         THE DEFENDANT:  Yes, I understand.

23         THE COURT:  And do you -- do you understand the

24   sentence imposed may be different from any estimate you may

25   have received from your attorney or the attorney for the

1  government?

2         THE DEFENDANT:  Yes.

3         THE COURT:  Do you understand that after it's been

4  determined the guideline range that applies to your case, the

5  district judge has the authority in some circumstances to

6  impose a sentence that is more severe or less severe than the

7  sentence called for by the advisory guidelines?

8         THE DEFENDANT:  Yes.

9         THE COURT:  And do you understand that under some

10 circumstances you and the government may have a right to appeal

11 any sentence imposed, and in your case that right is limited by

12 Paragraph 18 in the Plea Agreement?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Once again, do you understand that

15 parole's been abolished and if you are sentenced to prison, you

16 will not be released on parole?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Finally, having discussed your rights with

19 you, do you still want to proceed with a guilty plea?

20        THE DEFENDANT:  Yes.

21        THE COURT:  I will now review with you that portion of

22 the Plea Agreement in which you stipulate to facts as they

23 relate to your conduct as charged in the Indictment.  As I do

24 so, you will have the opportunity to correct any facts that you

25 believe are not correct.

1          And let's go back over to the Plea Agreement.  And I

2    direct your attention to the factual basis portion of the

3    Plea Agreement, which appears in Paragraph 21, over on Page 8,

4    and that continues over onto Page 9 and also in Paragraph 22,

5    which begins on Page 9 and ends on Page 10.

6          Now, you have initialed each page of the factual basis

7    portion of the Plea Agreement indicating your agreement with

8    the facts as set forth therein.  And I ask you, do you, in

9    fact, agree with the factual basis portion of the

10   Plea Agreement as it appears in Paragraphs 21 and 22 of the

11   Plea Agreement?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Do you wish to make any changes in the

14   factual basis portion of the Plea Agreement as set forth on

15   Page 9 -- or 8 through 10 and Paragraphs 21 and 22?

16          THE DEFENDANT:  No.

17          THE COURT:  Mr. Kolansky, is there any right or any

18   procedural provision that I have failed to account for prior to

19   receiving the plea?

20          MR. KOLANSKY:  I don't believe so, Your Honor.  Thank

21   you.

22          THE COURT:  And, Mr. Albenze, is there any right or

23   any procedural provision that I have failed to account for

24   before receiving the plea?

25          MR. ALBENZE:  No, Your Honor.

1          THE COURT:  Mr. Ross, I'm prepared to receive your

2     plea.  Do you want to speak again with your attorney before I

3     ask you what your plea is?

4          THE DEFENDANT:  No.

5          THE COURT:  Do you have any questions for me before I

6     ask you what your plea is?

7          THE DEFENDANT:  One.  When you say the Court has the

8     right to have a different sentence, it could be more or it

9     could also be less?

10         THE COURT:  Yes.  Under some circumstances.

11         Mr. Kolansky, could you elaborate on that in the

12     context of this case?

13         MR. KOLANSKY:  Certainly.  I think it starts,

14     Your Honor, with the fact that the sentencing recommendations

15     of the parties that are outlined in this Plea Agreement, they

16     are not binding on the Court at the time of sentencing.  The

17     Court is -- is tasked with implementing a sentence that the

18     Court believes to be sufficient but not greater than necessary

19     to effect the purposes of sentencing and in so doing is

20     required to consider the factors outlined in 3550 -- Title 18

21     United States Code § 3553(a).  Should the Court determine that

22     these guidelines are either too high or too low, the Court has

23     the authority to sentence -- to vary above or to vary below the

24     guideline computation that we have outlined in this

25     Plea Agreement.

1           Additionally, the Plea Agreement, at Paragraph 14,

2    indicates that there is no agreement about the sentence or the

3    sentencing range between the parties.  Now, practically, what

4    that means is that Mr. Ross, and Mr. Kinlin on his behalf, or

5    Mr. Albenze if he's at sentencing on Mr. Ross' behalf, has the

6    authority from this Plea Agreement to argue for a sentence

7    below the sentencing guidelines range, to present the Court

8    with mitigating facts and factors for the Court to consider in

9    an effort to convince the Court that the guidelines are too

10   high.  Practically speaking, that also means that the United

11   States has the authority, based on the Plea Agreement, to argue

12   to the Court that the sentencing guideline range is too low and

13   to ask the Court to sentence above.  But at the end of the day,

14   the sentencing decision lies with the Court after reviewing

15   those factors and taking into account everything and, of

16   course, through his sentence, to sentence the defendant to a

17   sentence that is sufficient but not greater than necessary to

18   effect the purposes of sentencing.

19           THE COURT:  Thank you, Mr. Kolansky.

20           Mr. Albenze, do you have anything to add on that?

21           MR. ALBENZE:  No, Your Honor.  That was a very good

22   representation of the procedure.

23           THE COURT:  And, Mr. Ross, having had that

24   explanation, are you satisfied that your question has been

25   addressed?

1            Again, we're having a problem with -- we're having a

2      problem with your audio.

3            MR. ALBENZE:  All right.  Is that better?

4            THE COURT:  Yes.

5            THE DEFENDANT:  Okay.  I was very satisfied with that

6      explanation, I appreciate it, and I understand completely.

7            THE COURT:  All right.  Very good.

8            Now, having advised you of your rights, having found

9      you competent, and having found a factual basis for your plea,

10     how do you plead to the counts in the Indictment, guilty or not

11     guilty?

12            THE DEFENDANT:  Guilty.

13            THE COURT:  It's my finding that the defendant,

14     Brian Ross, is fully competent to and capable of entering an

15     informed plea; that he is aware of the nature of the charges

16     brought against him and the consequences of his plea; and his

17     plea of guilty to the charges in the Indictment in this case is

18     a knowing and voluntary plea supported by an independent basis

19     in fact containing each of the essential elements of the

20     offenses charged.  I therefore recommend to the district judge

21     that he approve the Plea Agreement, accept Mr. Ross' plea, and

22     adjudge him guilty of the charges in the Indictment in this

23     case.

24            A Pre-Sentence Investigation Report will be prepared

25     prior to sentencing.  It's in your best interest to cooperate

with the probation officer in furnishing information for that
report since the report will be important in the decision as to
what your sentence will be.  You and your attorney will have a
right and have an opportunity to examine that report before
your sentencing and, at the time of sentencing, to comment on
the report, including challenges to any facts in the report
that you believe are not correct.

Your sentence has been scheduled. . . Mr. DeVan?

THE DEFENDANT:  Yes, Your Honor.  Sentencing will be
on January 25th, 2022, at 10:00 a.m. in Courtroom 15A before
District Judge Donald B. Nugent.

THE COURT:  Mr. Kolansky, it appears that Mr. Ross is
on -- is released on bond with conditions.  Do you have any
objection to he continuing to be so released pending his
sentencing?

MR. KOLANSKY:  No objection, Your Honor.  Thank you.

THE COURT:  Mr. Ross, you will be permitted to remain
released under the conditions of your bond.

Do you understand each condition of your bond?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand if you violate any of
the conditions of release, you may be arrested --

THE DEFENDANT:  Yes.

THE COURT:  -- and held in custody until further order
of the Court, and incur a fine or penalty in addition to those

1  for the offenses charged?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  Anything further for the

4  United States?

5          MR. KOLANSKY:  No, Your Honor.  Thank you.

6          THE COURT:  And, Mr. Albenze, anything further on

7  behalf of Mr. Ross?

8          MR. ALBENZE:  Nothing, Your Honor.  Thank you.

9          THE COURT:  There being no further business before the

10  Court, we are adjourned.

11          MR. KOLANSKY:  Thank you, Your Honor.

12          MR. ALBENZE:  Thank you.

13      (Proceedings adjourned at 2:46:06 p.m.)

14

15                    **C E R T I F I C A T E**

16          I certify that the foregoing is a correct transcript
   of the record of proceedings in the above-entitled matter
17  prepared from my stenotype notes.

18          */s/ Heather K. Newman*                    *10-18-2021*
           HEATHER K. NEWMAN, RMR, CRR                    DATE
19

20

21

22

23

24

25